# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:08CV558-FDW-DSC

| | |
|---|---|
| WILLIAM T. HUDGINS,  )<br>      Plaintiff,  )<br>  )<br>     vs.  )<br>  )<br>MICHAEL J. ASTRUE,  )<br>Commissioner of Social  )<br>Security Administration,  )<br>      Defendant.  )<br>  ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" (document #8) and "Memorandum Supporting ..." (document #9), both filed May 7, 2009; and the Defendant's "Motion for Summary Judgment" (document #10) and "Memorandum in Support of the Commissioner's Decision" (document #11), both filed May 28, 2009. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

## I. PROCEDURAL HISTORY

On May 27, 2005, the Plaintiff filed an application for a period of disability and Social Security disability benefits ("DIB"), alleging he was unable to work as of February 15, 2005. The Plaintiff's claim was denied initially and upon reconsideration.

The Plaintiff filed a timely Request for Hearing, and on November 5, 2007 a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated February 12, 2008, the ALJ denied Plaintiff's claim, finding that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date; that Plaintiff suffered from anorectal and perineal disease and atrial fibrillation which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1; that Plaintiff could not perform his past relevant work as a commercial airline pilot; that Plaintiff was a "younger individual" (48 years old on alleged onset date) with a high school education; and that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform medium, light and sedentary work that allowed a sit/stand option, and did not require the operation of heavy equipment or work around heights or hazards.[2]

The ALJ then shifted the burden to the Defendant to show the existence of other jobs in the national economy which the Plaintiff could have performed. The ALJ took testimony from a Vocational Expert, whose testimony was based on a hypothetical that factored in the above limitations. The Vocational Expert identified representative jobs (patient transporter, information clerk) that the Plaintiff could perform, with more than 15,000 of those positions being available in North Carolina. Accordingly, the ALJ concluded that there was substantial evidence that there were

---

[1] The Social Security Regulations define "residual functional capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Medium" work is defined in 20 C.F.R. § 404.1567© as follows:

> Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

a significant number of jobs in the national economy that the Plaintiff could perform and that, therefore, he was not disabled.

By notice dated October 9, 2008, the Appeals Council denied the Plaintiff's request for further administrative review.

The Plaintiff filed the present action on December 5, 2008. On appeal, Plaintiff assigns a single error: that the ALJ's "evaluation of [Plaintiff's] fatigue is not supported by substantial evidence." See Plaintiff's "Memorandum supporting ..." at 2 (document #9). The parties' cross-motions for summary judgment are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] At the outset, the undersigned notes that no treating or examining physician imposed restrictions that rendered Plaintiff unable to work. Although Dr. Jerby stated that Plaintiff could not work as a pilot if he could not sit for prolonged

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

4

periods, he did not impose limitations that precluded the performance of all work. As the ALJ noted in his opinion, the Plaintiff's symptoms improved after treatment. Moreover, Dr. Owen reported that Plaintiff did well on medication, and his symptoms were related to his non-compliance with his medication. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"); and Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling").

The ALJ further noted that with respect to Plaintiff's heart condition, Dr. Am concluded that his infrequent episodes of atrial fibrillation were most likely caused by the anxiety of being in a dentist's chair. Ultimately, the ALJ concluded that Plaintiff's ability to perform medium work was subject to restrictions, as the evidence established that he might have to change positions due to anorectal disease. Plaintiff was also restricted in his ability to operate heavy equipment or work around heights or hazards due to his atrial fibrillation.

Relevant to the Plaintiff's alleged fatigue, and as the Defendant notes in his brief, the medical records reveal no objective evidence of fatigue. Every reference in the medical notes is merely a recitation by the doctor of Plaintiff's own report of his symptoms. (Tr. 116, 118, 120, 151, 162). Further, Plaintiff's complaints of fatigue were fairly sporadic, and were relieved at least to some extent by changes in his medication. On January 24, 2007, Plaintiff reported that he was fatigued due to Metoprolol. Dr. Arn merely discontinued the medication. (Tr. 118). The following month, Dr. Owen noted that Plaintiff reported significant sleepiness and intermittent fatigue, and he referred Plaintiff for a sleep study. (Tr. 120-121). The results of the sleep study were normal, though, and

5

no restrictions were imposed due to Plaintiff's fatigue. (Tr. 123). Plaintiff made no further mention of his fatigue until September 2007, at which point he noted that increased stress caused more fatigue problems. (Tr. 162). Plaintiff then reported feeling somewhat tired after his dosage of flecainide was increased on November 26, 2007, but three days later, he reported that he felt much better. (Tr. 151, 155).

The ALJ also considered Plaintiff's testimony that he needed to sleep a lot. (Tr. 21). The ALJ concluded, however, that the totality of the evidence was not consistent with Plaintiff's "alleged persistence, intensity and limitations of his symptoms," a finding that Plaintiff has not challenged.

The ALJ properly applied the standard for determining a claimant's residual functioning capacity based on subjective complaints of pain (or in this instance, fatigue) and, in this case, the record contains substantial evidence to support the ALJ's conclusion that Plaintiff's testimony was <u>not</u> fully credible. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996), <u>citing</u> 20 C.F.R. § 416.929(b); <u>and</u> § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [her] ability to work." <u>Id.</u> at 595, <u>citing</u> 20 C.F.R. § 416.929(c)(1); <u>and</u> § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint

> motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's anorectal and perineal disease and atrial fibrillation – which <u>could</u> be expected to produce some of the pain and fatigue claimed by Plaintiff – and thus the ALJ essentially found that Plaintiff could satisfy the first prong of the test articulated in <u>Craig</u>. However, the ALJ also correctly evaluated the "intensity and persistence of [his] pain, and the extent to which it affects [his] ability to work," and found Plaintiff's subjective description of his limitations not to be credible.

"The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." <u>Mickles</u>, 29 F.3d at 921, <u>citing</u> <u>Hunter v. Sullivan</u>, 993 F.2d 31 (4th Cir. 1992) (claimant's failure to fill prescription for painkiller, which itself was indicated for only mild pain, and failure to follow medical and physical therapy regimen, supported ALJ's inference that claimant's pain was not as severe as he asserted). In this case, the ALJ clearly found an inconsistency between Plaintiff's claims of inability to work and his medical records, as well as with his objective ability to carry on with moderate daily activities (including walking a mile or two each day and working out on his Bowflex machine).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." <u>Seacrist</u>, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923, citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #8) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #10) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins,

766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED**.

Signed: June 1, 2009

David S. Cayer
United States Magistrate Judge